FILED
2012 Sep-20  PM 01:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

THOMAS LONG,              )
                                 )
           Plaintiff         )
                                 )
       vs.                 )     Case No.  1:10-cv-02859-HGD
                                 )
DAVID M. DIETRICH, et al.,    )
                                 )
         Defendants     )

## MEMORANDUM OPINION

The above-entitled civil action is before the court on the Motion for Summary Judgment filed by defendants.  (Doc. 15).  The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c), Rule 73, Fed.R.Civ.P., and LR 73.2.

Plaintiff, Thomas Long, commenced this action by filing a complaint against the City of Anniston, Alabama, and Anniston Police Officer Daniel M. Dietrich.[1] Plaintiff alleges that he was subjected to unlawful arrest and false imprisonment by Dietrich, and malicious prosecution by both defendants.  He also alleges that Dietrich's actions were taken pursuant to a pattern, policy or custom sanctioned by the City of Anniston.  He asserts causes of action pursuant to 42 U.S.C. § 1983, for

---

[1] While plaintiff names this defendant as "David M. Dietrich" in his complaint, his correct name is Daniel Dietrich.

violation of his Fourteenth Amendment rights.[2]   Count One is entitled "False Imprisonment" but also asserts unlawful arrest without arguable probable cause. Count Two is entitled "Malicious Prosecution" and specifically invokes 42 U.S.C. § 1983 and refers to Alabama law.   Count Three is entitled "City of Anniston Liability" and specifically mentions 42 U.S.C. § 1983.   It is alleged that "Dietrich's acts of falsely arresting and imprisoning plaintiff was the results [*sic*] of neglect, carelessness or unskillfulness on the defendant, City of Anniston's, behalf."   It also is alleged that the City of Anniston is liable for failing to properly supervise and train Dietrich and is liable under Alabama law for Dietrich's alleged false arrest and false imprisonment of plaintiff.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  The recently amended Rule 56(c) provides:

(1) **Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

---

[2] Plaintiff mentions 42 U.S.C. § 1985 in Paragraph 1 of the complaint; however, this appears to be a typographical error, as no cause of action pursuant to § 1985 is specifically asserted in the complaint.

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) **Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) **Materials Not Cited.**   The court need consider only the cited materials, but it may consider other materials in the record.

(4) **Affidavits or Declarations.**   An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c).  Defendants, as the parties seeking summary judgment, bear the initial responsibility of informing the district court of the basis for their motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).  A genuine issue of material fact is shown when the nonmoving party produces evidence so that a reasonable factfinder could return a verdict in its favor.  *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007).  If the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which he has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.  In reviewing whether the nonmoving party has met

its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter; the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 998-99 (11th Cir. 1992) (internal citations and quotations omitted). However, speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc*., 419 F.3d 1169, 1181 (11th Cir. 2005). A "mere scintilla of evidence" in support of the nonmoving party also cannot overcome a motion for summary judgment. *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

## FACTUAL BACKGROUND

Plaintiff was part of a group of citizens that regularly protested their displeasure with various aspects of the Monsanto pollution litigation. (Doc. 15-1, Long Depo., at 29-31). Plaintiff had been involved in every such protest for over three years. (*Id.*). On October 21, 2004, the group began the day protesting in front of Attorney Donald Stewart's office. (*Id.* at 28, 34-35). Dietrich, then a patrol officer for the Anniston Police Department, was dispatched to Stewart's office. (*Id.* at 34-35). After being asked to disperse, plaintiff's group left Stewart's office and began protesting outside the EPA's rented offices at West 10th Street. (*Id.* at 35-36). According to plaintiff's witness Roygers Burton, Dietrich told the protestors that if he had to come back, he would arrest someone. (Doc. 18-4, Roygers Burton Aff.).

Following a complaint to the Anniston Police Department about the protest by a Donald Williams, Dietrich was dispatched to the West 10th Street address. (Doc. 15-3, Dietrich Depo., at 5-6). The complaint concerned the protestors' interference with the vehicular traffic flow into the premises and the pedestrian flow in and out of the building. (*Id.*). Belenda Randall, an EPA employee, was at work in her office on October 21, 2004, and saw the demonstrators. However, they did not bother her or interfere with her work. (Doc. 18-3, Randall Aff.). The group had been protesting at the EPA office for 30 minutes when Dietrich arrived just before 12:00 noon. (Long Depo. at 33, 37; Doc. 15-7, Arrest Report).

Upon arrival at the scene, Dietrich first talked with Donald Williams, who told Dietrich that he believed in the protestors' constitutional right to picket but stated that they were interfering with vehicles needing to pull in the parking lot adjacent to the building. (Dietrich Depo. at 7-9, 36-37). Williams expressed concern about traffic being able to turn safely into the parking area of the building without possibly striking a pedestrian or picketer. (*Id.* at 9). Plaintiff had no knowledge of the substance of these complaints. (Doc. 15-5, Plaintiff's Interrogatory Answers, at ¶ 14). Dietrich then spoke to Mr. Virden, the leader of the protestors. (Dietrich Depo. at 11-12). Dietrich avers he asked to see their protest permit (*id.* at 12), but plaintiff avers Dietrich did not want to see the permit and only told the protestors that he was the law. (Long Depo. at 38). Dietrich acknowledged that the protesters had a right to be there. (Dietrich Depo. at 16). While Dietrich was talking to Virden, plaintiff interrupted and voiced his opinion that he had a right to be there to picket. (*Id.*).

Plaintiff kept repeating to Dietrich that the protesters had a right to be there.  (*Id*. at 17-18).  Dietrich asked plaintiff several times to discontinue his behavior and warned him if he did not, he could be arrested.  (*Id.* at 17).   Dietrich testified that plaintiff raised his voice, though plaintiff has denied shouting or yelling, and the other protesters started to gather closer to Dietrich and Officer Tad Carter.  (Dietrich Depo. at 19, 21; Long Depo. at 40).   Dietrich testified that in his eyes, plaintiff's actions caused some alarm in the other demonstrators because "they immediately came down to see what was going on," surrounding Dietrich, Carter and Virden.  (Dietrich Depo. at 17-19, 21, 50).   Plaintiff admits being agitated (Long Depo. at 39), but claims he was speaking normally and denies doing anything that would cause annoyance, alarm or disturbance to anyone in the EPA or other demonstrators.  (*See* Randall Aff.; Roygers Burton Aff.; Doc. 18-5, Julia Burton Aff.).   Roygers Burton and Julia Burton, also protestors, denied that plaintiff was loud or that plaintiff's conduct or speech were ever alarming to them.  (Roygers Burton Aff.; Julia Burton Aff.).   They also denied that the protestors "surrounded" Dietrich but were just trying to find out what was going on.  (*Id.*).  Plaintiff claims that he asked why Dietrich wanted to arrest them.  (Long Depo. at 39-40).   Dietrich testified that he felt that plaintiff's behavior "caused alarm to the other protesters, at which time they surrounded myself and officer –  the other officers involved.  At that time I was very uncomfortable with being surrounded by people because of his behavior."   (Dietrich Depo. at 50).   Therefore, due to the perceived alarm and "for officer safety purposes, I made the arrest."  (*Id.*).

Plaintiff was arrested by Dietrich without a warrant for disorderly conduct. (Long Depo. at 45-48; Dietrich Depo. at 25-26). Plaintiff was the only one arrested. (Long Depo. at 44; Doc. 15-7, Arrest Report). Dietrich told plaintiff to face away from him and put his hands behind his back; plaintiff complied and Dietrich placed plaintiff in handcuffs. (Dietrich Depo. at 43-44). Plaintiff testified that he suffered injury from Dietrich pulling his right arm behind him and pulling up on his right arm and wrist. (Doc. 15-5, Plaintiff's Interrogatory Answers, at ¶ 20; Long Depo. at 43). Plaintiff stayed in jail overnight. (Long Depo. at 53-54; Doc. 15-8, Municipal Court File Excerpts, at 1). On October 22, 2004, Dietrich signed a written complaint before the City Magistrate for the crime of disorderly conduct (*Ala. Code* § 13A-11-7)[3] that stated:

> Officer was dispatched to said location to a group of trespassers, subject raised his voice loudly stating "we have a right to be here." Subject was told to lower his voice or he would be arrested for disorderly conduct. He continued to shout "man we are allowed to be here." He shouted so loud that the food in his mouth came out.

---

[3] Title 13A-11-7, *Ala. Code*, provides in relevant part:

(a) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

    (1) Engages in fighting or in violent tumultuous or threatening behavior; or
    (2) Makes unreasonable noise; or
    (3) In a public place uses abusive or obscene language or makes an obscene gesture; or
    (4) Without lawful authority, disturbs any lawful assembly or meeting of persons; or
    (5) Obstructs vehicular or pedestrian traffic, or a transportation facility; or
    (6) Congregates with other person in a public place and refuses to comply with a lawful order of the police to disperse.

(Doc. 15-8 at 1, 3).  Williams and Carter were listed as witnesses.  (*Id.*)  On March 9, 2005, plaintiff was tried before the Anniston Municipal Court; plaintiff, Dietrich, Carter and Williams provided testimony.  (*Id.* at 4-5; Long Depo. at 57).  Plaintiff was found guilty and fined $50.00 plus court costs.  (Doc. 15-8 at 4-5).

On March 14, 2005, plaintiff timely appealed to the Circuit Court for *de novo* review, filed an appeal bond, and demanded a jury trial.  (Doc. 15-8 at 6).  The case was assigned to Judge Monk, who set arraignment for May 9, 2005.  (Doc. 15-9, Circuit Court File Excerpts, at 10).  Plaintiff's counsel appeared on plaintiff's behalf; plaintiff then waived arraignment and pled not guilty on May 5, 2005.  (*Id.* at 4-5, 11-12).  The case was set for trial in November 2005, January 2006 and March 2006, but it was continued each time.  (*Id.*).  City Prosecutor Theodore Copland testified that when the case was set for trial on January 30, 2006, he subpoenaed Dietrich and Carter, but the case did not go forward that day.  When the case was set for trial again on May 15, 2006, plaintiff filed a motion to recuse Judge Monk on May 2, 2006, which was granted on May 9, 2006.  (*Id.* at 4-5, 14-15).  The case was assigned to Judge Laird, and plaintiff filed a motion to appoint an out-of-county judge, which was denied on August 10, 2006.  (*Id.* at 5, 16-19).  He then filed a motion to recuse Judge Laird, which was denied on August 30, 2006.  (*Id.* at 5).  The case was set for trial on September 11, 2006.  (*Id.* at 8).  On September 7, 2006, plaintiff's counsel filed a notice that he had conflicts with the trial date.  (*Id.* at 5, 20-21).  On October 11,

2006, plaintiff filed a mandamus petition challenging the decision not to recuse, which was denied on October 25, 2006.  (*Id.* at 5, 22-31).  No filings were made in the Circuit Court from October 25, 2006, to April 3, 2009, when the case was transferred to Judge Howell.  (*Id.* at 5-6).  Plaintiff admits the City did nothing to impede his trial (Long Depo. at 81); however, he also felt that the prosecutor could have moved the case along faster.  (*Id.*).

Judge Howell set the case for trial on April 5, 2010.  (Doc. 15-9 at 6).  On April 5, 2010, Copland filed a motion to *nolle pros* the case, which was granted.  (*Id.* at 2, 6, 8).  Copland testified:

> I had nothing to do with any delays of that criminal case going forward. Neither Daniel Dietrich nor Tad Carter had anything to do with any delays of the criminal case going forward.  By the time the case was set for trial on April 5, 2010, neither Daniel Dietrich nor Tad Carter were employed by the City of Anniston.  Also, I made attempts to contact the witness who initiated the dispatch of Daniel Dietrich and Tad Carter to the location where [Plaintiff] had been arrested back on October 21, 2004, being Donald Williams, and could not locate Mr. Williams. Therefore, given the long amount of time which had passed between the date of [Plaintiff's] arrest for disorderly conduct, and the trial date and because I was unable to timely locate a crucial, independent witness and/or Daniel Dietrich or Tad Carter, I made the decision to nol pros the case.  I am fully aware of the testimony which had been presented by the City and by [Plaintiff] at the Municipal Court trial, and would have felt completely confident going forward with [Plaintiff's] appealed case had I been able to make contact with pertinent witnesses. . . .  Dietrich had no knowledge that I was going to nol pros the case, nor was I instructed by anyone employed by the City of Anniston or serving as an elected official for the City of Anniston, to nol pros the case.

(Doc. 15-4, Copland Aff., at 1-3).  Plaintiff avers that there is no record that Mr. Copland asked that the case be set for trial.  (Doc. 15-9 at 2, 6, 8).

## DISCUSSION

It is noted that in his response to the motion for summary judgment, plaintiff avers he is asserting claims solely pursuant to state law.  However, the complaint clearly invokes 42 U.S.C. § 1983 and the Fourteenth Amendment, and this court's federal question jurisdiction pursuant to 28 U.S.C. § 1331.  (*See* Doc. 1, Complaint, at ¶¶ 1, 2, 3, 21 and 25).  Further, if plaintiff indeed intends to disavow any federal claims, then this action is due to be dismissed for want of subject matter jurisdiction; plaintiff is a resident of the State of Alabama, and defendants are also residents of Alabama, such that no diversity of citizenship exists, as required under 28 U.S.C. § 1332.

In addition, plaintiff argues in his response to defendants' motion for summary judgment that he is claiming that defendant Dietrich used excessive force in effecting plaintiff's arrest.  Plaintiff alleges in "Factual Averments" that during his arrest, "he suffered injury to his right shoulder and wrists which required medical treatment." (Doc. 1, Complaint, at ¶ 10).  However, Count One asserts a claim for unlawful arrest and false imprisonment, claiming only that defendant Dietrich did not have arguable probable cause to arrest plaintiff for disorderly conduct.  Count Two asserts a claim

for malicious prosecution, and Count Three asserts a claim for municipal liability against the City of Anniston.  Nowhere in the complaint does plaintiff plead a separate cause of action for use of excessive force during arrest.  Therefore, the court will not construe the complaint as including a fourth cause of action for excessive force.

Plaintiff also refers in his brief to "intentional assault and battery claims." However, again, plaintiff has not set out a separate state law claim for assault and battery in his complaint, and the court will not construe the complaint as including such a claim.  While the complaints of *pro se* litigants are to be construed liberally by a court, *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), plaintiff is represented by counsel who is presumed to know how to plead a complaint and set out separate causes of action rather than trying to stretch allegations to include causes of action not specifically enumerated.

Further, the complaint mentions 42 U.S.C. § 1985 in the "Jurisdiction" section (Doc. 1 at ¶ 1), but there is no separate cause of action stated under § 1985. Therefore, the court does not construe the complaint as stating a cause of action for violation of § 1985.   Nevertheless, any such claim would be barred by the intracorporate conspiracy doctrine.  *See Dickerson v. Alachua County Comm'n*, 200 F.3d 761 (11th Cir. 2000); *Horne v. Russell County Comm'n*, 295 F.Supp.2d 1289 (M.D.Ala. 2003).

**False Arrest/False Imprisonment**

Defendants assert that summary judgment is due to be granted to them on plaintiff's claims pursuant to 42 U.S.C. § 1983 for false arrest and false imprisonment because they are barred by the applicable statute of limitations.

Title 42 U.S.C. § 1983 does not contain a statute of limitations.  Where a federal statute does not contain a limitations period, courts should look to the most analogous state statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 266-67, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985); *Owens v. Okure*, 488 U.S. 235, 249-50, 109 S.Ct. 573, 582, 102 L.Ed.2d 594 (1989).  Most civil rights actions are essentially claims to vindicate injuries to personal rights. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572 (1987) (action for discrimination is one for "fundamental injury to the individual rights of a person"); *Wilson*, 471 U.S. at 276, 105 S.Ct. at 1947 (claims which allege discrimination are best characterized as personal injury actions).  The Eleventh Circuit has followed *Okure* and held that § 1983 actions commenced in Alabama are subject to the two-year limitations period for personal injury actions set out under *Ala. Code* § 6-2-38. *Lufkin v. McCallum*, 956 F.2d 1104 (11th Cir. 1992).

A cause of action for false arrest accrues when the plaintiff is detained pursuant to a legal process. *Wallace v. Kato*, 549 U.S. 384, 397, 127 S.Ct. 1091, 1100, 166 L.Ed.2d 973 (2007).  The same is true with regard to a claim for false imprisonment.

*Id.*; *Brown v. Lewis*, 361 Fed.Appx. 51 (11th Cir. 2010) ("A claim for false arrest and false imprisonment must be brought within two years of the defendant's release from imprisonment."); *Burgest v. McAfee*, 264 Fed.Appx. 850 (11th Cir. 2008); *Locker v. City of St. Florian*, 989 So.2d 546, 550 (Ala.Civ.App. 2008) ("Locker was entitled to maintain his false-arrest and false-imprisonment claims on the dates of his arrests and imprisonment. . . .") (citing *Couch v. City of Sheffield*, 708 So.2d 144, 154 (Ala. 1998)).

In this case, plaintiff was arrested on October 21, 2004.  He was released from jail on October 22, 2004.  Thus, the two-year statute of limitations began to run on the false arrest claim on October 21, 2004, and on the false imprisonment claim on October 22, 2004.  He did not file this action until October 21, 2010, long after the limitation period elapsed.  Therefore, plaintiff's § 1983 claims for false arrest and false imprisonment are barred by the statute of limitations.  *See Wallace v. Kato*, 549 U.S. at 389, 127 S.Ct. at 1096; *Parrish v. City of Opp, Alabama*, 898 F.Supp. 839, 843 (M.D.Ala. 1995).[4]

---

[4] Even if the court were to consider the false arrest and false imprisonment claims to be made pursuant to state law, they are still time-barred.  *See Ala. Code* § 6-2-38(l); *Jennings v. City of Huntsville*, 677 So.2d 228 (Ala. 1996) (false arrest and false imprisonment claims under state law subject to two-year statute of limitations).  The same is true if plaintiff's complaint can be read as asserting negligence. *See Ala. Code* § 6-2-38(l); *Ex parte Tate & Lyle Sucralose, Inc.*, 81 So.3d 1217 (Ala. 2011).

**Malicious Prosecution**

This Circuit "has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003); *accord Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008). "[A]lthough both state law and federal law help inform the elements of the common law tort of malicious prosecution, a Fourth Amendment malicious prosecution claim under § 1983 remains a federal constitutional claim, and its elements and whether they are met ultimately are controlled by federal law." *Wood*, 323 F.3d at 882.

In order to prove malicious prosecution under § 1983, a plaintiff must establish "(1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004) (citing *Wood*, 323 F.3d at 881).  As to the first prong, the constituent elements of the common law tort of malicious prosecution are: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor[5]; and (4) caused damage to the plaintiff accused." *Wood*,

---

[5]  Defendants also assert that they are entitled to summary judgment because the proceeding was not terminated in plaintiff's favor, despite the fact that the charge ultimately was nol prossed. Rather, they point out that plaintiff was convicted in the municipal court.  They argue that plaintiff, through repeated delays of his circuit court trial, was responsible for the case being nol prossed and

323 F.3d at 882.[6]  The elements under Alabama law for the common-law tort of malicious prosecution are the same, except that they require only a "judicial proceeding" not a "criminal prosecution." *Delchamps, Inc. v. Bryant*, 738 So.2d 824, 831-32 (Ala. 1999).

As to the second prong, it is well established that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment.  *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010); *Wood*, 323 F.3d at 882; *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).  Consequently, the existence of probable cause defeats a § 1983 malicious prosecution claim.  *Kjellsen*, 517 F.3d at 1237; *Wood*, 323 F.3d at 881-82; *Carey v. City of Fall River*, 870 F.2d 40 (1st Cir. 1989) ("Because there was no clear lack of probable cause, defendants cannot be held liable for violating plaintiff's substantive due process rights on a malicious prosecution theory.") (citation omitted).

"Probable cause" is defined as "facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S.Ct. 854, 862, 43 L.Ed.2d 54

---

that the dismissal of the case was not based on any lack of evidence other than the delay causing the prosecution to lose track of its necessary witnesses.  Because the claim is being disposed of on other grounds, it is not necessary to reach these arguments.

[6]  "When malicious prosecution is brought as a federal constitutional tort, the outcome of the case does not hinge on state law, but federal law, and does not differ depending on the tort law of a particular state." *Wood*, 323 F.3d at 882 n.17.

(1975) (internal quotation marks, parentheses, and citations omitted).  "Probable cause exists when 'the facts and circumstances within the officers' knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed . . . an offense.'"  *Miller v. Harget*, 458 F.3d 1251, 1259 (11th Cir. 2006) (citing *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998)).

In order for probable cause to exist, "an arrest [must] be objectively reasonable under the totality of the circumstances,"  *Bailey v. Board of County Comm'rs of Alachua County, Fla.*, 956 F.2d 1112, 1119 (11th Cir. 1992), and an officer's subjective intentions and beliefs play no role in determining the existence of probable cause.  *See Rankin*, 133 F.3d at 1433-34.  A "law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge . . . would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  *Id.* at 1120 (quoting *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990)).  Probable cause to arrest thus requires something more than "mere suspicion," *Mallory v. United States*, 354 U.S. 449, 454, 77 S.Ct. 1356, 1359, 1 L.Ed.2d 1479 (1957), but does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction. *Adams v. Williams*, 407 U.S. 143, 149, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972).

In addition to arguing that Dietrich had probable cause to arrest Long for disorderly conduct, defendants assert that Dietrich is entitled to qualified immunity from liability on the malicious prosecution claim.  To receive qualified immunity, an officer need not have actual probable cause, but only "arguable" probable cause. *Brown*, 608 F.3d at 735; *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003); *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997).  Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." *Kingsland*, 382 F.3d at 1232 (quotation marks omitted); *accord Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998); *Gold v. City of Miami*, 121 F.3d 1442, 1445-46 (11th Cir. 1997) (disorderly conduct under Florida law); *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990).  "Indeed, it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable." *Von Stein*, 904 F.2d at 579 (quotation marks and ellipses omitted); *see also Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) ("Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." (quotation marks omitted)); *Montoute*, 114 F.3d at 184 ("Thus, the qualified immunity standard is broad enough to cover some 'mistaken judgment [ ]'. . . .").  The standard is an

objective one and does not include an inquiry into the officer's subjective intent or beliefs. *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010).

Whether an officer possesses arguable probable cause depends on the elements of the alleged crime and the operative fact pattern. *Skop v. City of Atlanta*, 485 F.3d 1130, 1137-38 (11th Cir. 2007); *Crosby*, 394 F.3d at 1333. Showing arguable probable cause does not, however, require proving every element of a crime. *Scarbrough v. Myles*, 245 F.3d 1299, 1302-03 (11th Cir. 2001). If the arresting officer had arguable probable cause to arrest for any offense, qualified immunity will apply. *Skop*, 485 F.3d at 1138.

A conviction for disorderly conduct is *prima facie* evidence of probable cause, even though the conviction is later vacated after being nol-prossed on appeal. *Gunter v. Pemco Aeroplex, Inc.*, 646 So.2d 1332 (Ala. 1994). It is incumbent on the plaintiff asserting malicious prosecution to come forward with substantial evidence to overcome the presumption of probable cause. *Id.* Probable cause supporting a disorderly conduct arrest was shown where a defendant loudly demanded to know why the sheriff had denied defendant's application for a pistol permit, in the hallway of the courthouse. *Sterling v. State*, 701 So.2d 71 (Ala.Crim.App. 1997). *Compare Walker v. Briley*, 140 F.Supp.2d 1249 (N.D.Ala. 2001) (fact issues existed as to probable cause for arrest for disorderly conduct, where plaintiff denied being loud or using profanity and only defendant, passenger and two officers were present).

In this case, the court finds that Dietrich had at least arguable probable cause to arrest Long for disorderly conduct.  While it is contested whether plaintiff was shouting at Dietrich, it is not contested that he repeatedly asserted to Dietrich the protesters' right to picket at the EPA office, even after Dietrich advised him to cease doing so and warned him that he could be arrested for disorderly conduct if he persisted.  It is also not contested that the other protesters gathered around Dietrich. While the Burtons characterize their actions as just trying to find out what was going on, and deny that plaintiff's actions caused them any alarm, it is clear that Dietrich was uncomfortable at being surrounded by the protesters and reasonably could have believed at the time that the other protesters were alarmed by plaintiff's repeated statements that the protestors had a right to be there.  Belenda Randall's affidavit statement that the protestors were not bothering her is not relevant to whether Dietrich was properly dispatched to the EPA building; Williams' complaint gave the police a reason to investigate.  Her statement also is not relevant to whether Dietrich had probable cause to arrest plaintiff because she was not on the scene when the arrest occurred.  Plaintiff's contention that Dietrich told the protestors if he had to come back out, he would arrest someone, and that he asserted that he was the law, does not factor into determining whether Dietrich is entitled to qualified immunity on the malicious prosecution claim, because that inquiry does not include an inquiry into

Dietrich's subjective intent.  Thus, Dietrich is entitled to qualified immunity from liability on plaintiff's claim of malicious prosecution.

Dietrich also asserts that, pursuant to the discretionary function immunity provided by *Ala. Code* § 6-5-338,[7] he is entitled to prevail on the malicious prosecution claim.  In 1994, the Alabama legislature granted statutory immunity from tort liability to municipal police officers for "conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." *Ala. Code* § 6-5-338(a).  Such immunity "shields [an] employee from liability if the employee is engaged in a discretionary act, instead of a ministerial one, when the

---

[7] Section 6-5-338 provides in pertinent part:

> (a) Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

alleged tortious conduct occurs." *McDonough v. Parker*, 781 So.2d 936, 938 (Ala. 2000) (*quoting Ex parte Alabama Dep't of Forensic Sciences*, 709 So.2d 455, 458 (Ala. 1997)). "Discretionary acts have been defined as those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances." *Wright v. Wynn*, 682 So.2d 1, 2 (Ala. 1996).

"'Ministerial acts,' on the other hand, are those acts 'done by officers and employees who are required to carry out the orders of others or to administer the law with little choice as to when, where, how, or under what circumstances their acts are to be done.'" *McDonough, supra* (*quoting Carroll v. Hammett*, 744 So.2d 906, 910 (Ala. 1999)). Actions by an officer in executing an arrest are generally considered discretionary functions for purposes of § 6-5-338. *See Wright*, 682 So.2d at 2; *Ex parte City of Montgomery*, 758 So.2d 565, 569-71 (Ala. 1999); *Sheth v. Webster*, 145 F.3d 1231, 1238-39 (11th Cir. 1998).

However, exempted from the coverage of the immunity provided by § 6-5-338 is conduct by a police officer that is "so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith." *Couch v. City of Sheffield*, 708 So.2d 144, 153 (Ala. 1998). Thus, in the absence of sufficient proof indicating that an officer acted with malice or in bad faith in making or carrying out an arrest, the

immunity of § 6-5-338 shields him from tort liability.  *See Wright, supra; Ex parte City of Montgomery*, *supra*; *Sheth*, *supra*.

Officer Dietrich's actions were clearly discretionary.  Therefore, discretionary function immunity shields him from tort liability except to the extent that his arrest of Long reasonably could be said to have been willful or malicious conduct or conduct in which he engaged in bad faith.  *See Wright, supra.*  Because the court has found that Dietrich had at least arguable probable cause to arrest Long for disorderly conduct, Dietrich's arrest of Long was not "so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith."  Thus, discretionary function immunity also applies to bar plaintiff's claim for malicious prosecution.

Plaintiff also appears to sue Dietrich in his official capacity.  "Whereas personal-capacity suits impose liability directly on government officials for actions taken under color of state law, an official-capacity suit is in actuality a suit against the governmental entity itself."  *Popham v. City of Kennesaw*, 820 F.2d 1570, 1581-82 (11th Cir. 1987).  Therefore, any claim against Dietrich in his official capacity is a suit against the City of Anniston.  For the reasons set out above, any claim of false arrest or false imprisonment against the City of Anniston based on the actions of Dietrich is barred by the statute of limitations, and any claim for malicious prosecution is barred by qualified and discretionary function immunity and without merit.

## Municipal Liability

Plaintiff has made claims against the City of Anniston based on the alleged actions of Officer Dietrich in arresting plaintiff which he claims resulted in a violation of 42 U.S.C. § 1983. The Supreme Court has placed strict limitations on municipal liability under § 1983. There is no *respondeat superior* liability making a municipality liable for the wrongful actions of its police officers in making a false arrest. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997). Instead, a municipality may be held liable for the actions of a police officer only when municipal "official policy" causes a constitutional violation. *See Monell*, 436 U.S. at 694-95, 98 S.Ct. at 2037-38. Mr. Long must "identify a municipal 'policy' or 'custom' that caused his injury," *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997) (citing *Monell*, 436 U.S. at 694, 98 S.Ct. at 2027). "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989). Stated differently, a municipality may be held liable under § 1983 only if "'action pursuant to official municipal policy of some nature caused a constitutional tort.'" *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 709, 109 S.Ct. 2702, 2709, 105 L.Ed.2d 598 (1989) (quoting *Monell*, 436 U.S. at 691, 98 S.Ct.

at 2036).  As the *Monell* court explained, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  436 U.S. at 694, 98 S.Ct. at 2037-38. *Accord Morro v. City of Birmingham*, 117 F.3d 508 (11th Cir. 1997).

"[A] plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997).  "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. . . .  A custom is a practice that is so settled and permanent that it takes on the force of law."  *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997), *cert. denied*, 522 U.S. 1075, 118 S.Ct. 852, 139 L.Ed.2d 753 (1998). The Eleventh Circuit has emphasized that:

> "[t]o establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice.  Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality." *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986); *see also Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994).

*Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999).

Plaintiff has offered no evidence that the City of Anniston has a custom or policy of arresting defendants without probable cause.  Simply because plaintiff was arrested by Dietrich does not make these actions the official policy of the City. Although the U.S. Supreme Court has held that there are occasions when a municipality may be liable for a single decision by a municipal policy maker under appropriate circumstances, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298-99, 89 L.Ed.2d 452 (1986), such is not the case here.  In *Pembaur*, a County prosecutor authorized police officers to break down a door to serve grand jury capias on witnesses who were believed to be inside.  There was no state law or municipal policy that prohibited such action.  The authority to make such decisions was vested in the County prosecutor.  Under these circumstances, the Supreme Court held that a single decision can be the basis of a "policy" sufficient to impose liability under *Monell*. *Pembaur*, 475 U.S. at 484-85, 106 S.Ct. at 1300-01.  However, Justice White noted that the fact that a particular official has discretion in the exercise of particular functions does not give rise to municipal liability based on an exercise of that discretion unless the official is also responsible, under state law, for establishing final governmental policy respecting such activity.  *Id.* at 486, 106 S.Ct. at 1306 (White, J., concurring).  He stated:

> This does not mean that every act of municipal officials with final authority to effect or authorize arrests and searches represents the policy of the municipality.  . . .  A sheriff, for example, is not the final

policymaker with respect to the probable cause requirement for a valid arrest.   He has no alternative but to act in accordance with the established standard; and his deliberate or mistaken departure from the controlling law of arrest would not represent municipal policy.

*Id*.

In *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), the Supreme Court stated that proof of a single instance of unconstitutional activity is not sufficient to impose liability on a city under the *Monell* rule, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.   Otherwise, the existence of an unconstitutional policy and its origin must be separately proved, and more proof than a single incident is necessary in every case to establish both the requisite fault on part of the municipality and the causal connection between the "policy" and the constitutional deprivation.   Here, with respect to the City of Anniston and municipal liability, plaintiff argues only, "The City of Anniston is liable because there is and was an underlying constitutional violation by Officer Dietrich."   There is no argument or evidence that Dietrich was a municipal policymaker nor of a custom or policy by any municipal policymaker for the City of Anniston that led to plaintiff's allegedly unconstitutional arrest and prosecution.   Therefore, the City of Anniston is entitled to summary judgment.

Because summary judgment is due to be granted on the claims of false arrest and false imprisonment on statute of limitation grounds, the City of Anniston also is entitled to summary judgment on those claims.  Further, because Dietrich is shielded from liability for malicious prosecution based on qualified immunity as outlined above, the City of Anniston is entitled to the same immunity.

Even if the complaint is read as attempting to impose municipal liability on the City of Anniston pursuant to state law, plaintiff's claim fails.  Title 11-47-190 of the Alabama Code provides in pertinent part:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, . . . .

Plaintiff has not alleged that Officer Dietrich was negligent in arresting him or that his prosecution was the result of negligence on the part of any city agent or employee. Instead, plaintiff clearly argues that his arrest and prosecution resulted from malice and ill will on the part of Dietrich; thus, intentional torts are alleged.  Therefore, he cannot state a claim under § 11-47-190.  *See Brown v. City of Huntsville*, 608 F.3d 724, 743 (11th Cir. 2010).

## CONCLUSION

Based on the foregoing analysis, the Court concludes that defendants' motion for summary judgment is due to be granted and this action dismissed with prejudice. A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 20th day of September, 2012.

_____
HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE